UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  08-61280-CV-COHN

GARLAND CORPORATION,

Magistrate Judge Seltzer

      Plaintiff,

vs.

EVERGREEN MARINE CORP.,

      Defendant.

_____/

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

_____THIS CAUSE is before the Court upon Defendant's Motion for Summary

Judgment, or in the alternative, Motion for Partial Summary Judgment [DE 15] and

Plaintiff's Motion for Summary Judgment [DE 17].  The Court has considered the

parties' motions, responses [DE's 30 and 31], and replies [DE 35 and 36], and is

otherwise fully advised in the premises.  The motions became ripe on June 4, 2009.

### I.  BACKGROUND

Plaintiff Garland Corporation ("Plaintiff" or "Garland") filed this action for

damages resulting from its contract to ship garlic from Chile to the United States with

Evergreen Marine Corporation ("Evergreen").  Each of the two separate shipments had

a Bill of Lading that comprises the parties' written agreement under the United States

Carriage of Goods by Sea Act ("COGSA"). The first shipment consisted of two

refrigerated containers of 1,580 bags of red garlic on 20 pallets.  Exhibit A to

Complaint.  The second shipment, arriving approximately one month later, consisted of

one refrigerated container of 1,000 bags of red garlic on 12 pallets.  Exhibit B to

Complaint.  When Garland opened the containers at its warehouse in Miami, after

transshipment by its trucking company from Port Everglades, a large percentage of the garlic in one of the two containers in the first shipment was sprouting, while a large percentage of the second shipment was also sprouting, significantly reducing the value of this type of garlic.

Garland's Complaint contains three causes of action, one for breach of the duty of a bailee, one for breach of the duty of a common carrier, and one for breach of contract under the Bills of Lading for the shipments.  All claims seek the same damages of $46,600.  The Court has admiralty jurisdiction over this matter.  The parties have filed cross motions for summary judgment.  While many facts are not in dispute, several genuine disputed issues of material facts remain.

## II.  FACTUAL BACKGROUND

Plaintiff Garland Corporation, or its agents, were responsible for packing, loading and sealing the garlic into a refrigerated container provided by Defendant Evergreen or its agent.  While Evergreen does not concede this next point, as its representatives were not present at the loading of the container, for purposes of these motions there is no record evidence indicating that the garlic was not in good order when it was loaded.  Rather, there is testimony regarding the procedures used on the shipments at issue by Garland and its Argentinian supplier to ensure that the garlic is in good condition when packed into a refrigerated container in Argentina, before land shipment to the port in Chile.  Declaration of Carlos Belaustegui, ¶5 [DE 17-4]; Declaration of Natalia Calderon, ¶ 5 [DE 17-7 and 22-2].

The facts regarding the voyage are undisputed.  The first two sealed,

refrigerated containers were received by Evergreen in Valparaiso, Chile on October 1, 2007.  On October 5, 2007, Evergreen loaded the containers on a ship and prepared a Bill of Lading (No. EGLV 732700084153) (Exhibit A to Complaint and Defendant's Exhibits 4 and 12[1] to Declaration of Yeun-Wen ("William") Liang [DE 15-4]).[2]  On October 20, 2007, the containers arrived at the Port of Panama.  On October 28, 2007, the containers were loaded onto another vessel.  This shipment arrived at Port Everglades in Fort Lauderdale, Florida on November 6, 2007.  The next day, the containers were delivered to Garland's trucking agent, Vito's Transport, for the one hour drive to Garland's warehouse in Miami.

Evergreen asserts that there is no evidence that any negligence occurred on its part during the voyage.  However, there is an issue of material fact on this issue.  On November 8, 2007, Garland's surveyor, Rafael Villanueva of Alpha Marine Surveyors ("AMS"), broke the seals of the containers and viewed the contents, along with Evergreen's surveyor, Dean Schuhknecht, and Juan Cremaschi, a Garland manager. Once the contents of the containers were inspected, Plaintiff asserts that both surveyors' reports indicate some temperature problems during the voyage that could have led to the sprouting of the garlic.  AMS Final Report, Exhibit A to Defendant's Motion [DE 15-2]; Bell One Control Services, Inc. General Condition Inspection at p. 5

---

[1]  The docket copy of the "back side" of the Bill of Lading is illegible for Court use due to the very small print used.  The language on the back side does not appear to be in dispute.  Should it become necessary at trial, Defendant Evergreen shall have the burden of securing a legible copy.

[2]  The parties dispute the appropriate COGSA "package" quantity based upon different interpretations of the numbers used in the Bills of Lading.

of 5, Plaintiff's Exhibit 1 to Reply Memorandum [DE 36-2].[3]  Plaintiff asserts that the second container of the first shipment, shipped at the same time and covered under the same Bill of Lading, contained no damage to the garlic.  Evergreen alleges that three months later, Plaintiff submitted a claim to Evergreen for the damaged shipment in the net amount of $6,239.12, after Plaintiff had received $12,413 from its own insurance carrier.

The second shipment at issue began on October 26, 2007, when Evergreen received a sealed refrigerated container in Valparaiso, Chile from Garland.  On November 2, 2007, Evergreen loaded the sealed containers on a ship and prepared a Bill of Lading (No. EGLV 732700094523) (Exhibit B to Complaint and Defendant's Exhibits 9 and 12 to Declaration of William Liang [DE 15-4]).[4]  On November 15, 2007, the containers arrived at the Port of Panama.  On November 17, 2007, the containers were loaded onto another vessel.  This shipment arrived at Port Everglades in Fort Lauderdale, Florida on November 29, 2007.  The next day, November 30, 2007, the containers were delivered to Garland's trucking agent, Vito's Transport, for the one hour drive to Garland's warehouse.

At Garland's warehouse on Friday, November 30, 2007, Garland personnel removed the security seal prior to the arrival of the Plaintiff's surveyor.  Evergreen's surveyor could not attend on that day.  Garland's surveying company, AMS, was

_____

[3]  The Court notes that each party submitted the other side's expert report to prove a particular point.

[4]  Again, the parties dispute the number of "packages" under COGSA.

present and noted in its report that the temperature recorder indicated that temperatures exceeding the proper range during different parts of the voyage.  AMS report at p. 5 [DE 15-4].[5]  The report states that on November 30, 2007, 75% of the garlic was sprouting and 40% of the product sighted with black mold.  Id. at p. 6.  A joint inspection with Evergreen's surveyor was supposed to take place on Monday, December 3, 2007, but the container was stolen from Garland over the weekend.  The container was returned by police and reinspected by both sides on December 7, 2007, at which point the remaining contents were worthless (some pallets had been removed when the container was out of Garland's possession).

### III.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

---

[5]  It appears that AMS prepared a single report based upon both its November 30, 2007 and December 7, 2007 observations [DE 15-3].

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249-50.

## B.  COGSA

COGSA provides the exclusive remedy for damages during the time after goods are loaded on a ship and until they are removed from the ship.  Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd., 215 F.3d 1217, 1220 (11th Cir. 2000).  Parties may contract to extend the coverage period to include land shipment portions of the transit.  Evergreen asserts that COGSA governs the parties' dispute.  Garland does not

6

oppose this legal conclusion.  Thus, Evergreen is entitled to summary judgement on the

non-COGSA claims in the Complaint for breach of the duties of a bailee (Count I) and

of a common carrier (Count II).

### 1.  Liability Limitation Under COGSA

Under COGSA, a carrier may limit its liability by providing clear language in its

Bill of Lading that it is adopting COGSA as governing law and that a "$500 per

package" limitation applies.  Insurance Co. of North America v. M/V Ocean Lynx, 901

F.2d 934, 939 (11th Cir. 1990).  The carrier must also afford the shipper the opportunity

to declare a higher value and pay a higher freight charge.  Id.  There is no dispute in

this case that Evergreen's Bill of Lading afforded such an opportunity to Garland.

Garland makes no argument that it can avoid the $500 per package limitation.  Thus,

the COGSA limitation of "$500 per package" applies to this dispute.


### 2.  What is a "package?" -- Pallets or Bags?

The parties do dispute what constitutes a "package" for purposes of the Bills of

Lading governing this case.  Evergreen asserts that it is either the number of

containers (i.e. 1 or 2), or the number of pallets onto which the bags of garlic were

wrapped (20 to 32).  Garland asserts that it is the bags of garlic that constitute a unit for

"package" purposes as specified in the Bills of Lading (1000 to 2580).  Garland asserts

that its actual damages are lower than the COGSA limitation amount under its "bags as

package" theory of the case.

COGSA itself does not define the term package, 46 U.S.C. § 30703(b), a

conundrum that has led to numerous Circuit Court of Appeals decisions on the issue. The United States Court of Appeals for the Eleventh Circuit has set forth several principles for courts to follow.  Groupe Chegaray v. P&O Containers, 251 F.3d 1359, 1368 (11th Cir. 2001) (citing Fishman & Tobin, Inc. v. Tropical Shipping & Construction Co., 240 F.3d 956, 963-65 (11th Cir. 2001).  First the court should look to the parties' intent as stated in the bill of lading.  In this case, the first Bill of Lading refer to the "Shipper's Load & Count, 1580 Units-Packages as per below," and "2 Container Shipper's Load & Count, 1580 Red Garlic Bags Common Grade, 15kg. net weight each, conditioned in 20 Pallets."  The second Bill of Lading similarly uses the number of containers, bags and pallets, though the only time the term "package" is used, it modifies the number of bags, not pallets or containers.  Though both sides make arguments that the Court can determine this issue on summary judgment, the Bills of Lading are ambiguous.  The Court will follow those courts who have denied summary judgment "where the bills of lading listed both the number of pallets as well as the number of bags or other potential COGSA packages."  Channa Imports, Inc. v. Hybur, Ltd., 2008 WL 2914977, *4 (S.D.Fla. July 25, 2008 ) (cases cited therein).

The second principle outlined by the Eleventh Circuit is whether some amount of preparation of the goods for the purpose of transportation has occurred.  Groupe Chegaray, 251 F.3d at 1368.  Here, Garland, the shipper, placed the garlic in 15 kg bags (33 pounds each) but also wrapped the bags into pallets.  Evergreen asserts that because Garland chose to palletize the garlic, the Court must conclude that pallets are the package.  However, under the case law, while the shipper's choice is a factor, it is

not rigidly applied to the shipper's detriment.  Rather, the use of two separate types of packaging is an ambiguous result.

The third and fourth principles are not applicable here, as there is no clear agreement that the container is the COGSA package, and, because the goods have been described as packaged in bags, they cannot be considered "goods not shipped in packages. Id.

Plaintiff Garland urges the Court to use the final principle, which is that "when a bill of lading is ambiguous regarding what constitutes the COGSA package. . ., the ambiguity is resolved against the carrier.  Id.  While this principle of last resort may or may not ultimately decide this case, the Court will not apply this principle upon summary judgment as the issue remains a question of fact in interpreting the parties' contract.

### 3.  Is Evergreen liable?

Whether or not pallets or bags are the COGSA "package" for damages purposes, Evergreen asserts that it is entitled to summary judgment on its lack of liability for any damage.  The Eleventh Circuit has set forth the burden shifting test for the court to determine liability:

> A shipper establishes a prima facie case under COGSA by proving that the carrier received the cargo in good condition but unloaded it in a damaged condition.  A carrier can rebut a shipper's prima facie case by establishing either that it exercised due diligence to prevent the damage to the cargo by properly handling, stowing, and caring for it in a seaworthy ship, 46 U.S.C.App. § 1303(1) & (2), or that the harm resulted from one of the excepted causes listed in section 1304(2).  If the carrier is able to rebut the shipper's prima facie case, the burden then shifts back to the shipper to show that the carrier's negligence was, at the least, a concurrent cause of the loss.

<u>Sony Magnetic Products Inc. of America v. Merivienti O/Y</u>, 863 F.2d 1537, 1539 (11th Cir. 1989) (internal citations omitted).[6]

Evergreen argues that Garland cannot show that Evergreen received the cargo in good condition, though Garland's declarations, allegedly based upon personal knowledge of the delivery of the garlic to Evergreen in Chile, raise an issue of fact on that issue.  Evergreen also asserts that its Bill of Lading creates a presumption of good condition upon delivery unless notice is given within three days.  Evergreen asserts that Garland failed to give such notice after inspection of the goods in Miami.  Garland responds by stating that it has presented evidence to overcome that presumption through its contemporaneous surveyor reports.

Evergreen next argues that it exercised due diligence because Garland packed and sealed the containers and Evergreen merely shipped the sealed containers to Port Everglades.  However, there is evidence from Evergreen's own surveyor that the container's temperature control malfunctioned.  Evergreen reserves the right to prove that the garlic was inherently defective (see 46 U.S.C. § 30706(b)(5)), but again, this statutory defense raises a fact issue for trial.  Finally, Evergreen asserts the issue of the intervening cause of the stolen container of the second shipment.  However, Garland's surveyor presents evidence that the garlic had evidence of decay due to temperature fluctuations prior to the container being stolen.  That Evergreen's surveyor was not present at the time of the initial inspection on November 30, 2007, may reduce

---

[6]  COGSA's statutory citation system was changed in 2006.

the weight of Garland's evidence, but it does not render the testimony inadmissible.[7]

## IV.  CONCLUSION

The Court concludes that both parties' motions for summary judgment should be denied.  Genuine issues of disputed material fact remain for a bench trial, including the condition of the goods at the beginning and end of their shipments, what was the container temperature during the voyage and who was responsible for its proper regulation, whether the COGSA "package" is the bags or the pallets, and the actual value of the garlic for damage calculation purposes.[8]

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendant's Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment [DE 15] and Plaintiff's Motion for Summary Judgment [DE 17] are hereby **DENIED**;

2.    Pursuant to this Court's December 2, 2008 Order [DE 7], this case remains on for calendar call on Thursday, June 18, 2009 and for trial during the two-week period commencing Monday, June 22, 2009;

3.    The Joint Pretrial Stipulation remains due today, June 15, 2009 per the prior

---

[7]  Though Evergreen has hinted that a spoliation of evidence of interference with evidence standard be used by the Court, it has not presented any evidence to suggest improper behavior on the part of Garland in opening and inspecting the second shipment of garlic outside of Evergreen's presence.

[8]  Evergreen also asserts that any damage award must be reduced by the amount of Garland's insurance proceeds because Garland failed to provide any evidence of ratification of this action by its insurer.  However, in response to the motion, Garland has submitted sufficient evidence of its insurer's ratification of this action to avoid summary judgment on this issue.  See Docket Entry 30-4.

pretrial deadline Scheduling Order [DE 10];

4.     In addition, the parties shall file proposed findings of fact and conclusions of law

by 5:00pm on Friday, June 19, 2009.

       **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 15th day of June, 2009.

JAMES I. COHN
United States District Judge

copies to:

Counsel of record on CM/ECF